United States Court of Appeals,

Eleventh Circuit.

No. 96-9297.

Joseph G. BROOKER, Petitioner,

v.

DUROCHER DOCK AND DREDGE, Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

Jan. 26, 1998.

Appeal from the Benefits Review Board United States Department of Labor

Before HATCHETT, Chief Judge, TJOFLAT and COX, Circuit Judges.

HATCHETT, Chief Judge:

Petitioner Joseph G. Brooker seeks review of final action of the Department of Labor denying his claim for compensation under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950. We affirm.

## I. BACKGROUND

Brooker, a welder, suffered injuries during the course of his employment with respondent Durocher Dock & Dredge (Durocher) after falling off an old seawall. At the time of Brooker's injury, Durocher was constructing a new seawall, or bulkhead, for an electric company for the sole purpose of protecting the company's generating plant from the encroaching Savannah River. The new seawall extended twenty feet out from the old seawall. Brooker fell landside, in the area between the old seawall and the power plant.

The electric company did not engage in any vessel activity at this location. Although Durocher used two barges to hold construction equipment, Brooker neither labored aboard nor did any work to either barge. On occasion, however, Brooker had to retrieve equipment and materials

from the barges.[1]  Durocher neither tied the barges to the seawall nor docked them at an adjacent harbor, the Georgia Ports Authority.  Instead, Durocher anchored the barges to "dolphins" in the river.[2]  At times, Durocher hired a tugboat service to move the barges.

Brooker sought compensation for his injury under the LHWCA.[3]  After an evidentiary hearing, an administrative law judge (ALJ) denied Brooker's claim, finding that he failed to meet the "situs" requirement under section 3(a) of the LHWCA, 33 U.S.C. § 903(a).  The ALJ reasoned that the electric company "receives no shipments by water and the seawall is not designed to facilitate either the docking of a vessel, its loading, unloading, construction or repair."  *Brooker v. Durocher Dock & Dredge,* No. 93-LHC-2457, at 1 (Dep't Labor March 24, 1994) (unpublished).  Brooker appealed the ALJ's decision to the Benefits Review Board (BRB).  Because Brooker's appeal had been pending for over one year as of September 12, 1996, the BRB deemed it affirmed and final by operation of law.[4]

## II. ISSUE

The only issue before the court is whether the place of Brooker's injury, the seawall, is a covered "situs" under section 3(a) of the LHWCA, 33 U.S.C. § 903(a).

## III. DISCUSSION

---

[1]Brooker was not moving to or from either barge at the time of his injury.

[2]A "dolphin" is "a cluster of closely driven piles used as a fender for a dock or as a mooring or guide for boats."  *Webster's New Collegiate Dictionary* 335 (1979).

[3]Brooker also sought, and received, compensation under the workers' compensation laws of Georgia.

[4]*See* Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104-134, Title I, § 101(d), 110 Stat. 1321, 1321-219 (codified at 33 U.S.C.A. § 921 note (West Supp.1997)).  We summarily reject Brooker's contention that the BRB's failure to review his petition renders his petition unripe.  *See Donaldson v. Coastal Marine Contracting Corp.,* 116 F.3d 1449, 1450 (11th Cir.1997).

We have jurisdiction to review this final agency action.  33 U.S.C. § 921(c).  Although this court reviews the ALJ's interpretation of the LHWCA *de novo,* it will not set aside the ALJ's findings of fact, including its situs determination, if substantial evidence supports them.  *See Texports Stevedore Co. v. Winchester,* 632 F.2d 504, 515 (5th Cir.1980) (*en banc* ).

An injured person must satisfy four elements in order to receive compensation under the LHWCA.  *Chesapeake & Ohio Ry. Co. v. Schwalb,* 493 U.S. 40, 45, 110 S.Ct. 381, 384, 107 L.Ed.2d 278 (1989).  First, the person must be injured in the course of employment.  33 U.S.C. § 902(2).  Next, the employer must have employees engaging in maritime employment.  33 U.S.C. § 902(4).  Third, the injured person must have "status," that is, be engaged in maritime employment. 33 U.S.C. § 902(3);  *Director, Office of Workers' Compensation Programs v. Perini N. River Assocs.,* 459 U.S. 297, 317, 103 S.Ct. 634, 647, 74 L.Ed.2d 465 (1983).  Finally, the injury must occur "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)."  33 U.S.C. § 903(a). This last element is known as the "situs" test.  *E.g., Schwalb,* 493 U.S. at 45, 110 S.Ct. at 384.

At the hearing before the ALJ, the parties stipulated to the first two elements.  The ALJ did not render any finding as to status, the third element.  As to situs, Durocher and its insurer concede that the place of Brooker's injury, the seawall, "adjoin[s]" a "navigable water[ ] of the United States." 33 U.S.C. § 903(a).  Also, Brooker does not contend that the seawall is a "wharf, dry dock, terminal, building way, [or] marine railway."  33 U.S.C. § 903(a).  The instant dispute, therefore, lies in whether the seawall is a "pier ... or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel."  33 U.S.C. § 903(a).

A.

Case law interpreting what constitutes a pier under the LHWCA is sparse. Apparently, the Ninth Circuit is the only court of appeals to have expressly interpreted "pier" under the LHWCA. In *Hurston v. Director, Office of Workers Compensation Programs,* 989 F.2d 1547, 1547 (9th Cir.1993), the court addressed "whether a structure built on pilings that reaches from land to navigable water is a "pier' which is a covered situs under § 903(a) even though it is not used for a traditional maritime activity such as the loading or repair of vessels." The structure in *Hurston,* entitled "Elwood Pier No. 1," was used to separate oil into water, gas, and crude oil and store the latter. 989 F.2d at 1548. The parties did not dispute that the structure at least "resembled a pier to the extent that it extended from the beach on pilings and touched the water at high tide." 989 F.2d at 1549. The Ninth Circuit concluded that Elwood Pier No. 1's "appearance and location" made it a pier, and that finding alone satisfied the situs test. 989 F.2d at 1553.

After examining the plain language, legislative history and context of section 3(a), the court held that the phrase "customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel" does not modify "pier." *Hurston,* 989 F.2d at 1550. The court found dispositive Congress's failure to insert a comma between the phrases "other adjoining area" and "customarily used." 989 F.2d at 1551. Further, the court reasoned that the maritime activity inquiry is subsumed within the "status" element. *Hurston,* 989 F.2d at 1553.

Both the Supreme Court and our predecessor circuit have delicately avoided the issue of whether a pier has to be customarily used for vessel activity. In *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 280, 97 S.Ct. 2348, 2365, 53 L.Ed.2d 320 (1977), the Court observed that "it is not at all clear that the phrase "customarily used' was intended to modify more than the immediately preceding phrase "other areas.'" The Court then *assumed* this modification, and found that a pier used for removing incoming cargo from containers and loading outgoing cargo into

containers satisfied the situs test because it was part of an "adjoining ... terminal ... customarily used ... in loading (and) unloading." 432 U.S. at 281, 97 S.Ct. at 2366. The Court reasoned that the other pier in the terminal "clearly was used for loading and unloading vessels," and noted that the cargo container activities on the pier at issue were "integral parts of the overall loading and unloading process." 432 U.S. at 281, 280 n. 42, 97 S.Ct. at 2366, 2365 n. 42.

Nearly three and one-half years after *Caputo,* our predecessor circuit, sitting *en banc,* also avoided the issue of whether the phrase "customarily used" modifies "pier" and the other five specific sites in section 3(a) of the LHWCA, 33 U.S.C. § 903(a). *Texports Stevedore Co. v. Winchester,* 632 F.2d 504, 512 n. 11 (5th Cir.1980) (*en banc* ), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981). The *Winchester* court held that a facility used to store and maintain vessel-loading equipment which was located five blocks inland constituted an "other adjoining area customarily used" in vessel activity and, therefore, satisfied the situs test. 632 F.2d at 506-08, 516-17.

Brooker urges us to follow *Hurston* and find that a seawall is the functional equivalent of a pier since pilings form the foundation of both structures. Even if this court were to adopt *Hurston* '*s* pier test as dispositive of situs, however, the seawall in this case is not a pier. While the instant seawall, like a typical pier, adjoins navigable waters and rests on vertical pilings anchored in the river bed, it certainly does not "appear[ ] to be a pier." *Hurston,* 989 F.2d at 1549. As the Ninth Circuit stated in *Hurston,* whether a facility is a "pier" is a pure factual question in the absence of a definition in the LHWCA. *Hurston,* 989 F.2d at 1551, 1553. The most persuasive evidence on this issue is, naturally, testimony from an eye-witness who knows a pier when he or she sees one. Here, the supervisor of the seawall construction project with fourteen years of experience

unequivocally answered "no," when asked whether the facility was a pier.[5] Photographs of the place of injury corroborate this testimony. Further, the only other witness, Brooker himself, repeatedly referred to the structure as a wall. Therefore, substantial evidence supports the ALJ's implicit rejection of Brooker's pier argument.

We, like the Supreme Court in *Caputo* and the former Fifth Circuit in *Winchester,* need not reach the issue of whether a pier must be "customarily used" for vessel activity to meet the situs test in section 3(a) of the LHWCA. Rather, we conclude that the ALJ did not err in failing to find the seawall to be a pier, with or without the "customarily used" modification.

### B.

Substantial evidence also supports the ALJ's finding that the seawall was not an "other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a). Brooker argues that the seawall was a covered situs based on its proximity to vessel activity in the neighboring Georgia Ports Authority. Durocher and its insurer correctly point out, however, that Brooker's argument fails under the plain meaning of section 3(a).

Under the LHWCA, it is irrelevant whether the Georgia Ports Authority or any other non-employer entity engages in vessel activity. *See* 33 U.S.C. § 903(a) (requiring the alleged situs to be "customarily used *by an employer* in loading, unloading, repairing, dismantling, or building a vessel") (emphasis added). It is equally irrelevant whether the alleged situs neighbors an entity engaged in vessel activity; it need only "adjoin" a navigable waterway. *See* 33 U.S.C. § 903(a) (requiring that the injury occur "upon" a navigable waterway, which includes certain "adjoining" areas); *Caputo,* 432 U.S. at 281, 97 S.Ct. at 2366 (finding a pier to be a covered situs because,

---

[5]We note that this witness worked for the electric company, not Durocher.

among other reasons, "[t]he entire terminal facility adjoined the water").

The evidence in this case shows that neither Brooker's employer, Durocher, nor the premises owner, the electric company, used the seawall to load, unload, repair, dismantle, or build a vessel. The construction supervisor testified that neither the old nor new seawall was designed to dock a vessel. As such, Durocher tethered its barges to dolphins rather than the seawall. Any loading and unloading on the barges was accomplished without resort to the seawall. Therefore, while the seawall adjoined a navigable waterway, it was not a place of traditional maritime activity at the time of Brooker's injury.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Department of Labor's determination that petitioner Brooker is not entitled to compensation under the LHWCA.

AFFIRMED.